UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CIRILIO LIMA SORIANO, | CASE NO. 2:26-cv-00900-DGE |
| Petitioner, | ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |
| v. | |
| JULIO HERNANDEZ et al., | |
| Respondents. | |

The Court GRANTS the petition for writ of habeas (Dkt. No. 1) and orders Petitioner's release subject to reasonable conditions of supervision.  The Court finds the immigration judge abused his discretion in denying bond and, as a result, Petitioner's bond hearing was constitutionally deficient.

## I.      BACKGROUND

### A.  Factual Background

Petitioner, a citizen of Mexico, entered the United States in 1996.  (Dkt. Nos. 1 at 6; 2-1 at 3; 2-4 at 10–12; 7 at 2.)  Petitioner then voluntarily departed to Mexico on May 31, 1996, and

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

re-entered the United States without inspection in 2001.  (Dkt. Nos. 2-1 at 3; 7 at 2.)  Since that time, Petitioner has continuously resided in the United States for approximately 25 years.  (Dkt. No. 2-4 at 7.)  He has been living at the same address since May 1, 2006.  (*Id*. at 72.).  He also has been employed by the same employer since approximately 2001 (*id*. at 74) and has filed tax returns over the years (Dkt. Nos. 2-2 at 13–100; 2-3.)

Petitioner is married and has three children.  (Dkt. No. 2-4 at 73, 75.)  Petitioner's oldest child is approximately 26 years old and has been granted Deferred Action for Childhood Arrivals ("DACA").  (*Id*. at 75.)  Petitioner's other two children are approximately 18 and 13 years old. (*Id*.)  The two younger children are United States citizens.  (*Id*.).

Petitioner's 13-year-old child has documented vision issues.  (*Id*. at 26–61.)  The child has been treated by the same medical provider since at least May 2016.  (*Id*.)  The child attends public school and has a Section 504 Accommodation/Intervention Plan.[1]  (*Id*. at 62–71.) Specific accommodations related to the child's vision impairments have been authorized.  (*Id*. at 62.)

Petitioner has no criminal history, nor has he ever been arrested for any alleged criminal conduct.  (Dkt. No. 2-5 at 5.).  Petitioner was nevertheless the "target of [a] field operation" when Respondents stopped his vehicle and detained him.  (*Id*.).

On February 5, 2026, Petitioner and several other similarly situated individuals filed a petition for a writ of habeas corpus in this Court.  *Castulo-Cerro et al v. Hermosillo et al*, Case No. 2:26-cv-00437-TMC.  On February 12, 2026, United States District Judge Tiffany M. Cartwright granted the petition, finding Petitioner was detained under 8 U.S.C. § 1226(a) as a

---

[1] Section 504 of the Rehabilitation Act of 1973 prohibits discrimination on the basis of disability in programs or activities that receive funding from the United States Department of Education.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

member of the *Rodriguez Vazquez*[2] bond denial class.  Judge Cartwright ordered Respondents to either release Petitioner or provide him a bond hearing under 8 U.S.C. § 1226(a) within 14 days of receiving a request for a hearing.  *Id.* at Dkt. No. 14.

On February 18, 2026, an Immigration Judge ("IJ") conducted Petitioner's bond hearing. (Dkt. No. 2-1 at 2.)  In support of his bond request, Petitioner presented the evidenced identified above, *supra*, regarding his personal, family, and employment history.  Petitioner also presented approximately 17 letters from family and community members supporting Petitioner's relationship with his spouse and children and his ties to his community, including from a neighbor of eight years who Petitioner has assisted over the years and from the directors of a community organization Petitioner has volunteered at for the past three years.  (Dkt. No. 2-4 at 96–126.)

At the bond hearing, Respondents submitted the "Record of Deportable/Inadmissible Alien (Form I-213)."  (Dkt. No. 2-5.). The I-213 identifies Petitioner's immigration history, that he was a "target" without explanation as to why, and confirms Petitioner has never "been arrested or convicted on any criminal offense."  (*Id*. at 5.)

The IJ concluded Petitioner "failed to meet his burden of showing that he was not a flight risk." (Dkt. No. 2-1 at 2.).  Despite Petitioner's "equities in the United States," the IJ found Petitioner "has a history of violating immigration laws," "has worked without authorization [using] multiple false Social Security numbers," and that Petitioner's "opportunities or relief from removal were exceedingly weak."  (*Id*. at 4.)  Thus, "[g]iven the relative weakness of [Petitioner's] claims, his history of immigration violations, and his use of false identities, the [IJ found] the [Petitioner] a very poor bail risk" and that "no amount of bail or condition of parole

---

[2] *See Rodriguez Vazquez v. Hermosillo et al*, Case No. 3:25-cv-05240-TMC.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

would be sufficient to mitigate the risk of flight[.]" (*Id*. at 5.)  In the end, the IJ concluded Petitioner failed to "show[] that he is not a flight risk." (*Id*.)

Sometime after Petitioner was denied bond, an immigration judge denied Petitioner's claims for relief from removal and ordered him removed to Mexico.[3] (Dkt. No. 7 at 2.) Petitioner appealed the decision on March 27, 2026.  (Dkt. Nos. 9; 9-1.)

**B.  Procedural History**

Petitioner filed a petition for a writ of habeas corpus on March 17, 2026.  (Dkt. No. 1.) Petitioner argues the immigration judge abused his discretion in assessing the factors used to determine whether an individual represents a flight risk and violated Petitioner's rights under the Due Process Clause of the Fifth Amendment.  (*Id.* at 16–18.)  Pursuant to the Court's standard scheduling order, Respondents filed a response on April 1, 2026.  (Dkt. No. 6.)  Petitioner filed a reply on April 6, 2026.  (Dkt. No. 8.)

## II.    ANALYSIS

**A.  Legal Standard**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance

---

[3] Respondents cite " May 19, 202" as the date when this decision was issued.  (Dkt. No. 7 at 2.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 4

of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### B. The Court Has Jurisdiction to Review the Bond Denial

Respondents argue the Court does not have jurisdiction to review the IJ's bond determination. Respondents contend Petitioner is not seeking to remedy any constitutional defect in his detention, but is instead attempting to relitigate a discretionary bond determination insulated from judicial review. (Dkt. No. 6.)

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, § 1226(e) does not preclude "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the [immigration judge's] discretionary bond determination was not reviewable in federal court . . . , we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Accordingly, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432*4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

Petitioner argues the IJ's conclusion that he was a flight risk is contrary to both the

Immigration and Nationality Act ("INA") and the Due Process Clause because it fails to meaningfully consider evidence that would support Petitioner's release. (Dkt. No. 1 at 2–3.) Petitioner is not challenging the IJ's discretionary judgment, but is instead challenging "whether the IJ provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled." *W.T.M. v. Bondi*, Case No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026). Given the nature of Petitioner's challenge, the Court finds it has subject matter jurisdiction over Petitioner's claims.

## C. The Court Waives Any Prudential Exhaustion Requirement

Respondents argue the Court should require Petitioner to exhaust his administrative remedies before seeking habeas relief. (Dkt. No. 6 at 5–7.) Exhaustion of administrative remedies is prudential rather than jurisdictional and may be required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)). Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the BIA's ruling on removability." *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

The first factor weighs against requiring prudential exhaustion. Respondents argue the Board of Immigration Appeals ("BIA") has "subject-matter expertise for individual immigration bond decisions" and "the Court would benefit from an administrative appellate record" where the IJ has made a factual finding." (Dkt. No. 6 at 6–7.) But the facts in this case are undisputed and the actual issue is whether, as a matter of law, the undisputed evidence presented at the bond hearing could establish that Petitioner posed a flight risk. Thus, the BIA's "expertise" in immigration bond decisions is unnecessary to generate a proper record or reach a proper decision. *See Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile").

The second factor is neutral on whether to enforce prudential exhaustion. Although relaxation of prudential exhaustion could encourage, as Respondents suggest, others to bypass the administrative appellate procedure (Dkt. No. 6 at 7), there also is some value in identifying specific circumstances under which, as a matter of law, a finding of flight risk is untenable. Admittedly, a ruling in this case may "not provide concrete guidance for a large swath of future administrative proceedings," s*ee Martinez v. Scott*, Case No. 2:25-cv-01538-TSZ-GJL, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, Case No. 2:25-cv-01538-TSZ, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025), but it would be beneficial to provide the specific immigration court, which regularly handles bond hearings, with guidance on the types of circumstances that may lead to a finding of constitutional deficiency.

As for the third factor, the Court finds it weighs against prudential exhaustion. Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error.

Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)). Petitioner has dependents who rely on him financially and emotionally, and that relationship is severely negatively impacted by his continued detention.

Accordingly, the Court finds it appropriate to waive any requirement that Petitioner exhaust his administrative remedies before seeking habeas relief.

## D. Petitioner's Bond Denial Violated Due Process

Petitioner argues the IJ's bond denial was constitutionally deficient because the conclusion that he was a flight risk fails to meaningfully engage with Petitioner's "decades of residence here, law-abiding behavior, deep family connections, and nearly twenty letters of support." (Dkt. No. 1 at 2–3.) The following are factors an immigration judge may consider in making bond determinations:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such

activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

The habeas court's review of an immigration judge's determination of flight risk is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784–785 (9th Cir. 2024); *Anyanwu v. Bondi*, Case No. C25-995-JLR-MLP, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, No. C25-0995JLR, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). When reviewing a determination for abuse of discretion, a court may only determine whether the IJ applied the correct legal standard, not reweigh evidence. *Martinez*, 124 F.4th at 785.

The Court concludes the IJ abused his discretion when he denied Petitioner's bond request. Here, the IJ relied on Petitioner's immigration history, employment history, and the potential strength of Petitioner's claims for relief from removal to support a finding of flight risk without explaining why those factors established flight risk or how they outweighed the significant evidence showing Petitioner is fixed and stable with his family in his community.

The IJ identified that Petitioner was granted voluntary departure in 1996 and returned without inspection in 2001. (Dkt. No. 2-1 at 3.) But the IJ failed to identify why conduct that occurred approximately 25 years ago (or more) suggests Petitioner would be motivated to flee and otherwise not appear at future immigration proceedings. The record identifies Petitioner has lived at the same address for the last 20 years (Dkt. No. 2-4 at 72), has worked for the same employer for 25 years (*id*. at 74), has two United States citizen children who are dependent on him, one with vision issues requiring regular medical evaluations and school accommodations

(*id*. at 26–70), has regularly volunteered in his community (*id*. at 101), and has no criminal history whatsoever (Dkt. No. 2-5 at 5).  The IJ provides no explanation why an unauthorized reentry into the United States 25 years ago would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee.  Concluding that an unlawful entry from 25 years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale.

The IJ also found that Petitioner's employment history, during which Petitioner "used multiple false Social Security numbers," i.e., "false identities," favored finding Petitioner "a very poor bail risk." (Dkt. No. 2-1 at 4–5.)  But again, the IJ provided no explanation as to why unlawful employment facilitated by the use of false Social Security numbers automatically weighs in favor of finding flight risk.  Notably, Petitioner, as part of his application for Cancellation of Removal for nonpermanent residents, is required to truthfully identify his entire employment history and identify each year he filed an income tax return.  (*See* Dkt. No. 2-5 at 74.)  Using the IJ's reasoning, any noncitizen applying for Cancellation of Removal who is unauthorized to work and who truthfully provides information about their employment history and tax return filings automatically is at risk of being found a flight risk.  Again, this is an illogical conclusion considering there was no evidence Petitioner used "false identities," i.e., false Social Security numbers, for reasons other than to maintain employment and where Petitioner reported his yearly W-2 tax forms (with the false Social Security numbers) to the Government.  (*See, e.g.*, Dkt. No. 2-3 at 2.)  Moreover, a noncitizen without any employment history is a factor that militates against release on bond because it would indicate the noncitizen is less likely to appear for removal proceedings.  *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805.

Lastly, the IJ identified that Petitioner's claims for relief from removal were relatively weak, weighing in favor of finding Petitioner "a poor bail risk." (Dkt. No. 2-1 at 5.)  The BIA has identified that an IJ "may consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond." *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805. The stated reason for this is that a noncitizen who likely faces inevitable removal may be less likely to appear at future removal hearings.  *Id*.  While it might be rational to draw such conclusion based on the specific facts presented in a particular case, the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case.  The IJ identified Petitioner "has equities in the United States" but then concluded without explanation that Petitioner's challenges in establishing relief automatically supported finding Petitioner a "very poor bail risk." (Dkt. No. 2-1 at 4, 5.)

Again, Petitioner has been living in the United States approximately 25 years, has lived at the same address for the past 20 years, has been employed with the same employer for 25 years, appears to be in a stable relationship with his wife, has dependent United States citizen children, one of whom is approximately 13 years of age with vision issues requiring regular medical evaluations and school accommodations, has regularly volunteered in his community (*id*. at 101), and has no criminal history whatsoever.  The IJ provided no rationale why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak.

**E.  Appropriate Remedy**

Petitioner argues the Court should release him immediately because he is not a flight risk nor is he subject to mandatory detention. (Dkt. No. 1 at 17.)  Respondents argue Petitioner is not

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 11

entitled to release because he cannot allege his detention has become indefinite pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (Dkt. No. 6 at 10–11.)  Petitioner asserts this is not a *Zadvydas* case involving a final order of removal, and that absent flight risk or danger to the community, Petitioner's continued detention would serve no purpose.  (Dkt. No. 8 at 11.)

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005).  Under the circumstances, the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy.  *See W.T.M.*, 2026 WL 262583, at *5; *Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *11 (D.R.I. Dec. 3, 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing[.]"); *Miri v. Bondi*, Case No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering habeas petitioner's immediate release after finding immigration judge abused discretion in denying petitioner's request for bond at the bond determination hearing).

## III.    ORDER

For the forgoing reasons, the Court GRANTS Petitioner's petition (Dkt. No. 1) for a writ of habeas corpus.  The Court ORDERS that Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody with reasonable conditions of supervision within ONE day of this Order.

Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 12

Within **TWENTY-FOUR (24)** hours of this order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody and SHALL file a copy of the conditions of supervision.

Petitioner requested attorney fees and costs under the Equal Access to Justice Act.  *See* 28 U.S.C. § 2412(d)(1)(A).  To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment. *See id.* §(d)(1)(B)  Accordingly, Petitioner may file a motion supporting such request no later than May 11, 2026.

Dated this 10th day of April, 2026.

David G. Estudillo
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 13